IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AARON ABADI, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | NO. 22-CV-2854 |
| | : | |
| TARGET CORPORATION, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                   **OCTOBER 13, 2023**

### I.      INTRODUCTION

Pro Se Plaintiff Aaron Abadi ("Abadi") alleges that he has a disability preventing him from wearing a facemask, and that Defendant Target Corporation ("Target") violated the Pennsylvania Human Relations Act ("PHRA") by insisting that he leave the store while not wearing a mask during the COVID-19 pandemic. Target moved for a judgment on the pleadings, alleging, *inter alia*, that its refusal to accommodate Abadi was justified given that he proposed a "direct threat" under the law. For the foregoing reasons, Target's motion is **GRANTED**.

### II.      BACKGROUND AND PROCEDURAL POSTURE

Abadi filed this Complaint *in forma pauperis* ("IFP"), alleging that Target discriminated against him due to his disability. *See* ECF Nos. 1-2. He alleges that he has a disability in the form of a "sensory processing disorder," rendering his face, head, and neck extremely sensitive to any kind of touch. ECF No. 2 ¶¶ 10-12. *See also Id.* at Exhibits B-C. Accordingly, he states that he is subject to "unbearable" discomfort if he attempts to wear a face mask. *Id.* ¶ 12.

During the COVID-19 pandemic, Target had a policy requiring masks for all individuals shopping in-person. ECF No. 23 at 13; Exhibit A. On January 11, 2021, Abadi alleges that when

he entered Target without wearing a mask, he was asked to put one on. ECF No. 2 ¶ 24. When he attempted to explain that he could not wear one due to a disability, he alleges that he "was followed around the store by seven or eight employees, yelling at [him] to wear a mask or leave." *Id.* ¶ 25. Eventually, he left the store, without being permitted to purchase his items. *Id.* ¶¶ 27, 33.

Abadi asserts that he suffered "significant" "emotional toll and anxiety" as a result of this incident. *Id.* ¶ 35. He then filed a claim with the Pennsylvania Human Rights Commission and then a Complaint in this Court. *Id.* ¶ 34.

Abadi's Complaint asserted violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1985, 42 U.S.C. § 1986, the Pennsylvania Human Relations Act ("PHRA"), and the Rehabilitation Act. *Id.* ¶¶ 39-79. Defendants moved to dismiss the case for failure to state a claim (ECF No. 23), and this Court granted the motion as to all counts. ECF No. 29. Abadi appealed, and the Third Circuit affirmed dismissal of all federal counts, but vacated dismissal of the PHRA claim. *See Abadi v. Target Corp.,* No. 23-1050, 2023 WL 4045373 (3d Cir. June 16, 2023). The Third Circuit explained that this Court's PHRA analysis previously focused on whether Target had a discriminatory motive but failed to analyze Abadi's claim under the correct standard, because discriminatory motive "is not a necessary component of a failure-to-accommodate claim." *Id.* at *3. The appellate court also noted that Target urged the court to affirm the dismissal of the PHRA claim based on the "direct threat" defense, but the court "decline[d] to reach this argument in the first instance and express[ed] no view on the merits of this or any other defense." *Id.* at *3 n.6.

On remand, Target moved for judgment on the pleadings, making three arguments. *See* ECF No. 38. First, Abadi's sole remaining state-law claim does not satisfy the amount in controversy requirement under 28 U.S.C. § 1332(a). *See also* ECF No. 38 at 1–2 Second, Abadi presented a "direct threat" under the PHRA, and thus, Target was not required to accommodate

him. *Id.* at 2. Third, Abadi misrepresented his poverty status on his IFP application, subjecting his claims to dismissal. *Id.* at 2–3. This motion is fully briefed and ripe for review.

### III.   STANDARD OF REVIEW

Under Rule 12(c), a party can move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion under this rule is "subject to the same standard of review applicable to a motion to dismiss under Rule 12(b)(6)." *In re Actiq Sales and Mktg. Practices Litig.*, Nos. 07-4492, 09-431, 2009 WL 2581717, at *2 (E.D. Pa. Aug. 21, 2009) (citing *Turbe v. Gov't of Virgin Islands,* 938 F.2d 427, 428 (3d Cir. 1991)). The only difference between the two standards is that on a 12(c) motion, the court "reviews not only the complaint but also the answer and written instruments attached to the pleadings." *Mendoza v. Diversified Consultants, Inc.*, No. 18-2005, 2019 WL 2524117, at *1 (E.D. Pa. June 18, 2019) (quoting *Brautigam v. Fraley*, 684 F. Supp. 2d 589, 591 (M.D. Pa. 2010)).

In a deciding a 12(b)(6) motion, the Court "accept[s] the factual allegations in the complaint as true, draw[s] all reasonable inferences in favor of the plaintiff, and assess[es] whether the complaint and the exhibits attached to it contain enough facts to state a claim to relief that is plausible on its face." *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (internal citations omitted). Nevertheless, the Court "disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citation omitted).

### IV.   DISCUSSION

#### a.  Diversity Jurisdiction

The federal claims in this action have all been dismissed, so this Court must first determine whether it has jurisdiction to hear the sole remaining state claim under the diversity statute. 28

U.S.C. § 1332(a); *see Kovalev v. Stepansky*, 835 F. App'x 678, 680 (3d Cir. 2020) (concluding that when all federal claims were dismissed, the district court needed to determine whether it had diversity jurisdiction over the remaining state law claims). The statute requires complete diversity of citizenship between the parties,[1] and an amount in controversy in the litigation exceeding $75,000. 28 U.S.C. § 1332(a). A court cannot rule on a matter except where it has jurisdiction, and "[d]efenses relating to subject matter jurisdiction can be raised at any time." *Brown v. Philadelphia Hous. Auth.*, 350 F.3d 338, 347 (3d Cir. 2003) (citing *Sansom Comm. v. Lynn*, 735 F.2d 1535, 1538 (3d Cir. 1984)).

The appropriate test for determining the amount in controversy where there are no jurisdictional disputes of fact is whether "it is clear to a legal certainty that the plaintiff *cannot recover* the amount claimed." *Sciarrino v. State Farm Fire and Cas. Co.*, 476 F. Supp. 3d 91, 95 (E.D. Pa. 2020) (quoting *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 505 (3d Cir. 2014) (emphasis in original). To assess the specific figure that is in controversy, "[t]ypically, the sum alleged by the plaintiff in the complaint controls."[2] *Berkery v. State Farm Mut. Auto. Ins. Co.,* No. 21-1500, 2021 WL 2879511, at *2 (3d Cir. 2021) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). If the amount in controversy is challenged, the legal certainty test requires dismissal if "the jurisdictional amount is not satisfied as a matter of law" or if "as a matter of fact" the amount of claimed damages have been alleged "beyond the amount of a reasonable recovery, for the purpose of creating federal jurisdiction." *Graham v. Valley Forge*

---

[1] As discussed in its prior opinion, because Abadi is pro se, this Court construes his allegation that he resides in New York sufficient to deem him a citizen of New York. *See Abadi v. Target Corp.*, No. 22-cv-2854, 2023 WL 137422, at *7 (E.D. Pa. Jan. 9, 2023). Similarly, the Court will construe Abadi's allegation that Target is based in Minnesota as an allegation that Target is incorporated in Minnesota and has its principal place of business there. *Id.* Target does not dispute the citizenship allegations. ECF No. 38 at 8.

[2] Abadi seeks "at least $300,000" in damages. *See* ECF No. 2 at 21.

*Military Acad. and Coll.,* No. 19-1362, 2019 WL 6337717, at \*5 (E.D. Pa. Nov. 27, 2019) (citing

*Barry v. Edmunds*, 116 U.S. 550, 559–60 (1886)).

The former version of the test requires dismissal where a plaintiff seeks compensatory

damages in an amount below the jurisdictional figure. *See, e.g.*, *Dolin v. Asian Am. Accessories,*

*Inc.,* 449 F. App'x 216, 219 (3d Cir. 2011) (finding no jurisdiction where compensatory damages

alleged in the complaint were less than $75,000). Similarly, the amount in controversy can be

insufficient where the relevant statutes cap damages below the amount in controversy. *See Sykes*

*v. Cook Inc.,* 72 F.4th 195, 207 (7th Cir. 2023) ("Contractual or statutory caps on damages, and

statutory prohibitions on recovering certain categories of damages, may limit the amount in

controversy.") (Internal citations omitted).

Target contends that it is highly unlikely that Abadi will receive a judgment in the amount

alleged based on generalized claims of emotional distress that stem from this single event, given

past decisions in ostensibly more extreme cases. *See* ECF No. 38 at 10-13. For his part, Abadi

references numerous cases with a wide range of underlying facts that resulted in judgments

exceeding $75,000. *See* ECF No. 39 at 2-4; Exhibit A. Despite the limited showing of harm in

Abadi's complaint, this Court cannot find to a legal certainty that Abadi cannot recover at least

$75,000.

First, Target has pointed to no provision limiting recovery under the PHRA. Indeed, the

Third Circuit has recognized that the PHRA does not have a damages cap. *See Gagliardo v.*

*Connaught Labs., Inc.,* 311 F.3d 565, 570-71 (3d Cir. 2002) ("The fact that the PHRA does not

contain a damages cap further indicates that it was intended to provide a remedy beyond its federal

counterpart, the ADA.").

Second, Abadi has not itemized his damages to a figure less than $75,000. *See* ECF No. 2 at 21. Unlike the plaintiffs in *Samuel-Bassett,* Abadi did not delineate his damages such that they were legally unable to exceed $75,000. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 399-402 (3d Cir. 2004)*; see also Jacobs v. Geisinger Wyoming Med.* Ctr., No. 21-3362, 2022 WL 1564193, at *1-2 (3d Cir. 2022) (denying jurisdiction where Plaintiff presented an itemized list of damages amounting to approximately $20,000); *Berkery,* 2021 WL 2879511, at *3 (denying jurisdiction where Plaintiff claimed compensatory damages under $800, and other damages could not exceed $75,000). Other plaintiffs have been denied jurisdiction when relying on an unconstitutionally high punitive damages award to meet the $75,000 threshold.[3] *See, e.g.*, *Kalick v. Nw. Airlines Corp.,* 372 F. App'x 317, 321 (3d Cir. 2010) (denying jurisdiction where punitive damages would have had to be 112 times greater than compensatory damages to reach $75,000). Abadi's Complaint does not cabin his recovery to a figure below $75,000. *See* ECF No. 2. Even if his claimed damages appear excessive, that in itself is not sufficient to state that they are below $75,000 to a legal certainty. *See Douglas v. Joseph*, 656 F. App'x 602, 605 (3d Cir. 2016) (finding jurisdiction where a pro se federal inmate plaintiff alleged that his missing paintings were valued over $500,000 and defendants argued that the ascribed value was only sentimental).

The nature of Abadi's damages suggests a recovery below $75,000 – Abadi comes close to conceding as much. *See* ECF NO. 39 at 3. Nevertheless, this Court cannot determine that to a legal certainty. Abadi is not required to fully substantiate his damages at this stage, and the possibility that he could put forth additional evidence of harm at a later stage of discovery cannot be foreclosed. Moreover, juries can be unpredictable. For example, in *Knox v. PPG Industries, Inc.,* the Court remitted a $1.5 million non-economic damages award to $300,000, where the

---

[3] The PHRA does not allow for punitive damages. *See Glucker v. U.S. Steel Corp.*, 212 F. Supp. 3d 549, 561 (W.D. Pa. 2016) (citing *Hoy v. Angelone*, 720 A.2d 745, 749 (Pa. 1998)).

evidence of emotional damages consisted of Plaintiff feeling "completely devastated," finding it hard to trust people, and losing confidence. No. 2:15-cv-01434-BRW, 2019 WL 13178865, at *1 (W.D. Pa. May 15, 2019).

Finally, Target has not put forward any evidence suggesting that Abadi inflated his damages figure specifically for the purposes of securing federal jurisdiction. The allegation of dubiously high damages figures usually arises where a plaintiff initially seeks a federal forum on the basis of diversity jurisdiction. In this case, it is particularly unlikely that Abadi did so since he he initially made four federal claims and one state claim. He had no reason to inflate his damages award for the purposes of attaining federal jurisdiction when filing his Complaint.

Therefore, this Court finds that it has jurisdiction and may proceed to Abadi's PHRA claim.

### b. Plaintiff's Pennsylvania Human Relations Act Claim

PHRA claims are generally governed by the same standards as the ADA. *See Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117, 123, 125-26 (3d Cir. 2018).[4] Therefore, courts typically analyze PHRA claims using ADA case law. *See Buskirk v. Apollo Metals*, 307 F.3d 160, 166 n.1 (3d Cir. 2002) ("The PHRA and the ADA are basically the same in relevant respects and Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts.") (quoting *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (cleaned up)*; see also Anderson v. Norfolk S. Ry. Co.*, No. 21-1735, 2022 WL 1073581, at *3 (3d Cir. Apr. 11, 2022) (analyzing the direct threat defense to a PHRA claim using ADA standards).

Accordingly, the Third Circuit directed this Court to determine whether Abadi "plead[ed] facts raising a plausible inference that (1) he is disabled; (2) Target is a public accommodation; and (3) Target unlawfully discriminated against [Abadi] on the basis of his disability by (a) failing

---

[4] This is true except insofar as the PHRA allows for money damages, which the ADA does not. *See Berardelli,* 900 F.3d at 126.

to make a reasonable modification that was (b) necessary to accommodate his disability." *Abadi*, 2023 WL 4045373, at *3 (internal citations omitted). Target argues that the Court does not need to reach this analysis, asserting the affirmative defense that Abadi constituted a "direct threat" under the governing ADA regulations. ECF No. 38 at 13-18. Abadi contends that the exemptions from the mask requirements in CDC guidance indicate that the direct threat exception is misapplied here. ECF No. 39 at 6-11. This Court agrees with Target.

The Third Circuit has a long-established rule allowing courts to dismiss a case under Rule 12(b)(6) "on the basis of an affirmative defense '*if* the predicate establishing the defense is apparent *from the face of the complaint.*'" *Brody v. Hankin,* 145 F. App'x 768, 771 (3d Cir. 2005) (quoting *Bethel v. Jendoco Constr. Corp.,* 570 F.2d 1168, 1174 n.10 (3d Cir. 1978)) (emphasis in original). Initially, this principle was raised only in reference to affirmative defenses listed in Rule 8(c). *See Bethel*, 570 F.2d at 1174. However, the Third Circuit has dismissed cases at the motion to dismiss stage where "the defense is apparent on the face of the complaint," including affirmative defenses available under the ADA. *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014). Here, because the facts surrounding the direct threat defense arise directly from the pleadings, and therefore, the defense is "apparent on the face of the complaint" the Court can consider this defense. *See id.*

The ADA contains a provision allowing an entity to deny "goods, services, facilities, privileges, advantages and accommodations of such entity where such individual poses a direct threat to the health or safety of others." 42 U.S.C. § 12182(b)(3). This provision is based on "the recognition in *School Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287 (1987) . . . of the importance of prohibiting discrimination against individuals with disabilities while protecting others from

8

significant health and safety risks, resulting, for instance, from a contagious disease." *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998). The ADA's direct threat regulations state that:

> In determining whether an individual poses a direct threat to the health or safety of others, a public accommodation must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: The nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk.

28 C.F.R. § 36.208(b). An individualized assessment cannot be based on "generalizations or stereotypes," but "will not usually require the services of a physician." *Giles v. Sprouts Farmers Mkt., Inc.,* No. 20-cv-2131-GPC-JLB, 2021 WL 2072379, at *5 (S.D. Cal. May 24, 2021) (citing ADA Title III Technical Assistance Manual § III-3.8000)). The assessment can be based on "current medical knowledge," which can include guidance from public health authorities such as the Centers for Disease Control. 28 C.F.R. § 36.208(B); *see Ewers v. Columbia Med. Clinic,* No. 3:23-cv-0009-IM, 2023 WL 5629796, at *6 (D. Or. Aug. 31, 2023)*; see also Giles*, 2021 WL 2072379, at *5. The individualized nature of the inquiry means that the analysis will differ depending on the threat posed. For example, in *Abbott*, a dentist was liable for refusing to fill the cavity of an HIV-positive patient, even as the medical consensus suggested that dentists *should* perform procedures in those circumstances. *See Abbott v. Bragdon,* 163 F.3d 87, 89 (1st Cir. 1998).

By contrast, in the context of the COVID-19 pandemic in January 2021, the full weight of the medical establishment favored "[u]niversal use of face masks" as a means to prevent contagion. ECF No. 38-1 ("CDC Recommendation") at 4. CDC guidance further stated:

> [c]onsistent and correct use of face masks is a public health strategy critical to reducing respiratory transmission of SARS-CoV-2, particularly in light of estimates that approximately one half of new infections are transmitted by persons who have no symptoms. Compelling evidence now supports the benefits of cloth face masks for both source control (to protect others) and, to a lesser extent, protection of the wearer.

9

*Id.* Some of the documents Abadi attached to his filings similarly urge the wearing of face masks. *See* ECF No. 2, Exhibit A at 2 ("Safety measures such as…the wearing of face masks or cloth face coverings are our first line of defense to keep people safe from severe illness); ("Wearing a face mask is one important way to slow the spread of COVID-19."); *see also* ECF No. 39 Exhibit B (An order from the Secretary of the Pennsylvania Department of Health to businesses "requir[ing] all customers to wear masks while on premises, and deny[ing] entry to individuals not wearing masks"); *id.* at Exhibit C (same)).

With objective medical evidence strongly supporting universal masking, many federal courts have determined that an individualized assessment as to the presence of a direct threat need only be as simple as whether an individual was wearing a mask. *See Ewers*, 2023 WL 5629796, at *6 ("The Individual Defendant's individualized assessment was whether Plaintiff was wearing a mask, and whether allowing Plaintiff to proceed with his appointment without wearing a mask would pose a direct threat."); *Hernandez v. Costco Wholesale Corp.,* No. CV-21-00357-PHX-DLR, 2022 WL 17537981, at *2 (D. Ariz. Dec. 8, 2022) ("Costco canceled Mr. Hernandez's Costco membership and attempted to deny in-person services to him after it conducted an individualized assessment of the direct threat posed by his unwillingness to wear a face mask or face shield. Such action does not amount to discrimination under the ADA."); *Doscher v. Timberland Reg'l Library*, No. 3:22-cv-05340-RJB, 2022 WL 17667907, at *6 (W.D. Wash. Dec. 14, 2022) ("[Defendant] made an individualized assessment that a Library patron, such as the plaintiff, who entered without a mask during the pandemic posed [a direct] threat."); *Witt v. Bristol Farms,* No. 21-cv-00411-BAS-AGS, 2021 WL 5203297, at *6 (S.D. Cal. Nov. 9, 2021) ("Defendants' individualized assessment to determine whether [plaintiff] posed a direct threat was

10

whether [plaintiff] was wearing a mask"); *Giles,* 2021 WL 2072379, at \*5 ("the individualized assessment was whether a customer (such as Plaintiff) was wearing a facial covering or not").

The medical evidence demonstrated that individuals without symptoms could still contract and spread COVID-19. *See* CDC Recommendation (recommending "[u]niversal use of face masks…in light of estimates that approximately one half of new infections are transmitted by persons who have no symptoms."). Therefore, the necessary assessment was not whether an individual displayed symptoms of COVID-19, but whether that individual was wearing a mask. *See Witt*, 2021 WL 5203297, at \*6 (holding the proper individualized assessment "was whether [plaintiff] was wearing a mask, and not whether [plaintiff] displayed any symptoms of COVID-19 because without a mask [plaintiff] posed a direct threat to the health and safety of others").

Straightforward individualized assessments have been found to be appropriate outside of the COVID-19 context as well. The Ninth Circuit found an individualized assessment appropriate where an employee made a "deci[sion] on the spot" not to allow a service animal in the ship's lounge where a policy prohibited animals because a frequent passenger was allergic to dogs – even where that employee was not aware whether the individual with allergies was on the boat at that time. *Lockett v. Catalina Channel Express, Inc.*, 496 F.3d 1061, 1066 (9th Cir. 2007).[5]

Target had a policy requiring masks for virtually all customers based on guidance from the nation's leading public health authority. *See* CDC Recommendation; ECF No. 23-2 (requiring "masks…for all team members in accordance with CDC guidelines."). Based on that guidance, the Target employees determined that that an individual posed a direct threat if he was not wearing a mask in the midst of the COVID-19 pandemic. *See* ECF No. 2 ¶ 44 ("Target has a stated policy

---

[5] *Lockett* also had the same factual posture as Abadi's case, "concern[ing] a lawsuit brought after the defendant had made the requested accommodation under the ADA, but challenging the defendant's failure to make an accommodation as soon as it was first requested." 496 F.3d at 1067; *see* ECF No. 23 Exhibit B (indicating Target removed its masking requirement on May 17, 2021, which was over a year before Abadi filed his Complaint).

that all people entering their locations must wear masks.") Therefore, they made an assessment

that individuals not wearing masks posed a direct threat. The Target employees correctly assessed

that Abadi was not wearing a mask and denied him access to the store on that basis. ECF No. 2 ¶

24. Construing Abadi's complaint in the light most favorable to him, it is clear that he was not

wearing a mask, that Target employees asked him to leave after perceiving that he was not wearing

a mask, and that they did so based on guidance from the CDC and other reputable public health

organizations. *See* ECF No. 2 ¶¶ 24-33; *see also* ECF No. 23-2 (indicating Target's universal

masking policy); CDC Recommendation.

### c.  Abadi's IFP Status

Target also seeks dismissal of this suit on the basis that Abadi has misrepresented his

financial status in his IFP application. ECF No. 38 at 19-21. The IFP statute "'is designed to ensure

that indigent litigants have meaningful access to the federal courts.'" *Douris v. Middletown Twp.*,

293 F. App'x 130, 131 (3d Cir. 2008) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).

While the litigant does not need to establish he is destitute, he "must establish that he is unable to

pay the costs of his suit." *Id.* (quoting *Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601

(3d Cir. 1989)).

The statute allows a litigant to commence an action in federal court by filing an affidavit,

in "good faith," stating that he or she is unable to pay the costs of the lawsuit. *Douris*, 293 F. App'x

at 131 (citing *Neitzke*, 490 U.S. at 324). "Courts have held that if the affiant's assertion of poverty

is untrue, the mandatory language of 28 U.S.C. § 1915(e)(2)(A) requires that the court dismiss the

suit." *Portis v. Geren*, No. 1:06-cv-1510, 2007 WL 2461799, at *2 (M.D. Pa. Aug. 23, 2007)

(citations omitted).

In considering a motion to proceed without paying fees, courts may consider: "'(1) possible aid from friends or relatives; (2) possible aid from charities; (3) regular employment; (4) earning power; (5) unencumbered assets; (6) retention of counsel; and (7) the particular cost relative to the applicant's financial means.'" *Mohn v. United States*, No. 23-2653, 2023 WL 4684918, at *3 (E.D. Pa. July 20, 2023) (quoting *In re Koren*, 176 B.R. 740, 744 (Bankr. E.D. Pa. 1995)); *see also Cason v. Johnston*, No. 20-cv-4695, 2020 WL 12654452, at *1 (E.D. Pa. Nov. 9, 2020). Thus, the Court may consider "the resources that the applicant has or can get from those who ordinarily provide the applicant with the necessities of life, such as from a spouse, parent, adult sibling or other next friend.'" *Mohn*, 2023 WL 4684918, at *3.

Over the course of this litigation, Target has made numerous allegations that Abadi is misrepresenting his poverty status in order to gain free access to federal court. Target produced posts purportedly from Abadi's Facebook account indicating that he travelled to eleven countries, as well as several states distant from New York, while pursuing this litigation. *See* ECF No. 23 at 10. Abadi responded that a "good friend" paid for him to go with his girlfriend to Hungary, Austria, Slovakia, and Poland on a trip to commemorate relatives who were victims of the Holocaust. ECF No. 25 at 3-4. In response to photographs from a trip to India, Abadi responded that an investor for one of his business ventures paid for his trip there. *Id.* at 8. He also stated that his ex-wife paid for him to travel to Israel to care for their daughter who was undergoing a medical issue. *Id.* Beyond alleging generally that some of the Facebook posts concerned events from some years ago, Abadi did not specifically respond to allegations regarding trips to Spain, Utah, Arizona, Las Vegas, Belgium, the Czech Republic, or Germany. *Compare* ECF No. 23 at 7 *with* ECF No. 25 at 3-8.

Abadi is also the CEO of National Environmental Group, LLC ("NEG"), which, according to Target, is a company that holds itself out as having developed projects and serviced customers.

ECF No. 23 at 7. Abadi contends that he is the sole member of the LLC, and currently makes no money from the company. ECF No. 25 at 5; ECF No. 39 at 17-18. Nevertheless, filings in a separate case show that in 2021-2022, NEG paid a law firm over $100,000 to secure a default judgment exceeding $140 million. *See Nat'l Env't Grp., LLC v. Al Maktoum*, No. 3:21-cv-01046-SALM, ECF No. 22, Exhibit 4 ¶¶ 5-9; ECF No. 24.

This is not the first time a court has questioned Abadi's IFP status. Abadi has filed numerous cases around the country on similar facts to this case, also IFP. One court has already dismissed a case from Abadi, deciding that his allegations of poverty were untrue because he had travelled from New York to Las Vegas to gamble at casinos and stay at hotels. *Abadi v. Caesars Entertainment Inc.*, No. 2:22-cv-00285-CDS-NJK, 2022 WL 4117087 (D. Nev. Aug. 1, 2022) *report and recommendation adopted*, No. 2:22-cv-00285-CDS-NJK, 2022 WL 4117085 (D. Nev. Aug. 30, 2022), *aff'd*, *Abadi v. Caesars Entertainment, Inc.*, No. 22-16353, 2022 WL 17550961, at *1 (9th Cir. Nov. 10, 2022). That court also noted that Abadi "submits he is awaiting the receipt of $56 million as part of a deal for a corporation of which he is the CEO." *Abadi*, 2022 WL 4117087, at *2 n.4. At least one other court has questioned Abadi's IFP status, though ultimately finding his submissions explaining his financial situation acceptable.[6] *Abadi v. Walmart, Inc.*, No. 1:22-cv-00228-GZS, 2022 WL 9822322, at *1 (D. Me. Oct. 17, 2022).

Abadi has spent much of his time in the past few years filing pro se lawsuits in districts across the country. In addition to this action, he has filed cases in Florida, *Abadi*, 338 So. 3d 1101; Nevada, *Abadi*, 2022 WL 4117087; and Maine, *Abadi*, 2022 WL 9822322. He has also filed

---

[6] Additionally, although not in the IFP context, a Florida court noted that Abadi's pleadings stated that he "planned to visit [Walt Disney World in Florida] with his family in late September or early October 2021" as he did on a "yearly basis before the COVID pandemic." *Abadi v. Walt Disney World Parks & Resorts*, 338 So. 3d 1101, 1104 (Fla. Dist. Ct. App. 2022).

appeals in the Second, Third, Ninth, and D.C. Circuits.[7] He has even filed four petitions for certiorari with the U.S. Supreme Court (all denied). *See Abadi et al. v. TSA*, 2023 WL 6379048 (Mem) (U.S. 2023); *Abadi v. Dep't of Transp.,* 143 S. Ct. 220 (Mem) (2022); *Abadi v. Dep't of Transp.,* 142 S. Ct. 1694 (2022) (Mem); *Abadi v. Dep't of Labor*, 142 S. Ct. 893 (Mem) (2022).

Skepticism of IFP status is warranted when IFP plaintiffs wage aggressive litigation campaigns, especially in multiple cases simultaneously. *See Assaad-Faltas v. Univ. of South Carolina*, 971 F. Supp. 985, 988 (D. S.C. 1997). This skepticism is magnified when an IFP plaintiff "flood[s] the Court and opposing counsel with numerous legal filings, many of which contains multiple pages and/or exhibits." *Id.* Parties are entitled to pursue their cases as they see fit, but their "ability to do so is entirely inconsistent with…alleged indigency." *Id.* at 989.

Abadi's allegations of poverty strain credulity. Nevertheless, this Court initially dismissed Abadi's claims on independent bases, and therefore did not need to reach the IFP issue. *See Abdullah v. Small Bus. Banking Dep't of Bank of Am.,* No. 13-305, 2013 WL 1389755, at *1 n.2 (E.D. Pa. Apr. 5, 2013) ("as the Court will dismiss the amended complaint for failure to state a claim, it will not order plaintiff to show cause as to why his *in forma pauperis* status should be revoked."). *See also Abadi*, 2023 WL 137422, at *3 n.3.  The same is true here. Dismissal on the basis that IFP status is misrepresented requires a higher evidentiary burden than has been submitted so far. *See Portis*, 2007 WL 2461799, at *2 (dismissing case where Defendant produced documents showing Plaintiff had an annual salary over $33,000, and Plaintiff stated that was correct); *Assad-Faltas*, 971 F. Supp. at 989 (dismissing case after plaintiff filed an affidavit in response to an order

---

[7] *See Abadi v. City of New York*, 2023 WL 3295949, at *1 (2d Cir. 2023); *Abadi.,* 2023 WL 4045373, at *1; *Abadi*, 2022 WL 17550961, at *1; *In re Abadi*, 2022 WL 2541249, at *1 (D.C. Cir. 2022); *Abadi v. Dep't of Transportation*, 2021 WL 7500325, at *1 (2d Cir. 2021)

to show cause). As a result, this Court reserves a ruling on whether Abadi misrepresented his poverty status in order to file IFP.

## V.    CONCLUSION

For the reasons set forth above, Target's motion is granted, and Abadi's PHRA claim is dismissed with prejudice.

**BY THE COURT:**

**/s/ Chad F. Kenney**

_____

**CHAD F. KENNEY, JUDGE**